UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CMP, LLC                                                    CIVIL ACTION

V.                                                          NO. 16-6850

RAILWAY SPINE PRODUCTIONS, LLC, ET AL.                      SECTION F

ORDER AND REASONS

Before the Court is the defendants' partial motion to dismiss for failure to state a claim. For the reasons that follow, the motion is GRANTED.

**Background**

This litigation arises out of a production company's use of private property to film scenes for a television series.

CMP, LLC owns rural property in the Town of Jean Lafitte, located in Jefferson Parish, Louisiana. Railway Spine Productions, LLC (RSP), a television production company, entered into a Location Agreement with CMP to use its property as a filming location during June and July 2015 in order to film scenes for a television series entitled *Quarry*. According to the Location Agreement dated May 12, 2015, work on CMP's property would last from June 9, 2015 to

1

July 28, 2015. This time period was broken down into set preparation, shooting, and wrap periods. During set preparation, from June 9, 2015 to July 6, 2015, RSP was to prepare sets called Vietnam Village, Marine Barracks, and Heroin Dock. Shooting the scenes was estimated to last four days, July 7 to July 13, 2015. And, the wrap period, in which property and personnel would be removed from CMP's property was estimated to last from July 14, 2015 to July 28, 2015. The Agreement provided that CMP would be paid $8,000 for prep, another $8,000 for wrap, and $7,500 for each day of shooting. The Agreement also provided for additional fees, including an overage fee to be paid in the event that CMP's property was occupied beyond the term.

By July 20, 2015, in accordance with its contractual obligations, RSP had removed most but not all of its personnel and equipment. RSP had left behind refuse, construction materials, equipment, and portions of temporary sets and props, as well as river sand. CMP submitted to RSP its contractor's invoice in the amount of $32,145.74 for remaining clean up and damage repair. Mickey Lambert, on behalf of RSP, agreed with the scope of the work contemplated by the invoice, but not the price; he countered with changes amounting to a total of $19,214.50. On July 31, 2015, CMP submitted its contractor's revised invoice for clean up in the amount of $19,400.

The parties mutually agreed on that amount for cleanup. Lambert told CMP that CMP must first execute a release before RSP paid the $19,400. Concerned that CMP may be liable for any mitigation or penalties imposed by regulatory authorities if the defendants had failed to obtain the necessary regulatory permits before depositing river sand into CMP's wetlands, CMP refused to sign the release.[1] The parties reached a stalemate. Meanwhile, Mickey Lambert, RSP's location manager, emailed New Orleans area movie production scouts and the New Orleans Mayor's Office Director of Film on October 16, 2015, stating that he had "a very bad experience" shooting at CMP's property and that the experience "extended well beyond production, to the point where studio attorneys are still involved."

This litigation ensued. On April 22, 2016, CMP sued Railway Spine Productions, LLC, Seven Curses Productions, LLC, Abel Meet Cain Productions, LLC, and Home Box Office, Inc. in state court for breach of contract,[2] defamation, and trespass; CMP also seeks

---

[1] CMP hired a lawyer to draft a release that did not waive the indemnity provisions in the Agreement. The release was forwarded to the defendants on August 15, 2015 and included a provision that HBO shall be the guarantor of the indemnity provision in the Agreement. Defendants countered with yet another release that was unacceptable to CMP.

[2] In the state court petition, CMP lists five breaches of the Agreement: (1) failure to obtain necessary permits prior to occupying CMP's property, in particular, before depositing river sand on CMP's wetlands; (2) failure to completely remove RSP's

3

to recover "a reasonable percentage of any income and benefit derived from the production of [*Quarry*] which in any manner depict CMP's Property." On May 23, 2016, the defendants removed the case to this Court, invoking the Court's diversity jurisdiction. The defendants now seek to dismiss the plaintiff's defamation claim as well as the claim seeking a percentage of income derived from the production of *Quarry*.[3]

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser

---

property from the site and failure to restore CMP's property to its pre-work condition; (3) failure to pay the site representative fee ($100/day) since June 18, 2015; (4) failure to pay the overage fee ($1,500/day) from 7/29/15 due to RSP's continuing occupation of the property; and (5) attempt to impose unauthorized and overreaching conditions on CMP in return for their obligation to pay for the cleanup of CMP's property.

[3] On September 13, 2016, the magistrate judge conducted a settlement conference in which "resolution of a single, discrete claim among the many asserted in this lawsuit was agreed upon, but no overall settlement of the case was reached." See Minute Entry dated 9/13/16. There is nothing in the record to indicate which claim was dismissed.

Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff."  See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation

5

marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted)(citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as

6

other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

II.

A.

The defendants first seek dismissal of the plaintiff's defamation claim on the grounds that opinions are not actionable and the plaintiff fails to allege any damages associated with the unactionable opinion. The plaintiff counters that Lambert's statements and comments in the challenged email were intentional, malicious, untrue, and intended to cause injury by discouraging other location scouts and managers from using the property. The plaintiff has failed to state a plausible defamation claim.

Claims of defamation arise under state negligence law under Louisiana Civil Code article 2315 and involve "the invasion of a person's interest in his...reputation and good name." Fitzgerald v. Tucker, 737 So.2d 706, 715 (La. 1999). To succeed on a defamation claim in Louisiana, the plaintiff must prove four elements: "(1) a false and defamatory statement concerning

7

another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher and (4) resulting injury." Cluse v. H&E Equipment Services, Inc., 34 So.2d 959, 970 (La.App. 3 Cir. 3/31/10)(quoting Fitzgerald, 737 So.2d at 715-16). Under Louisiana law, defamatory words traditionally have been divided into two categories: those that are defamatory *per se* and those that are susceptible of a defamatory meaning. Kennedy v. Sheriff of E. Baton Rouge, 2005-1418 (La. 7/10/06, 4-5); 935 So.2d 669, 674-75. The distinction is important because, if the plaintiff proves that words are defamatory *per se*, falsity and malice are presumed, and the burden shifts to the defendant to rebut the adverse presumption. Id.

"By definition, a statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule." Kennedy v. Sheriff of East Baton Rouge, 935 So. 2d 669, 675 (La. 2006). Words that accuse another of criminal conduct, or words that "by their very nature tend to injure one's personal or professional reputation[,]" are defamatory *per se*. Id. And, "[m]alice (or fault), for purposes of the tort of defamation, is the lack of reasonable belief in the truth of the

8

statement giving rise to the defamation." Costello v. Hardy, 2003-1146 (La. 1/21/04, 18); 864 So.2d 129, 143.

The Louisiana Supreme Court sensibly has instructed that statements of opinion are not actionable in defamation:

> A pure statement of opinion, which is based totally on the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation. That is because falsity is an indispensable element of any defamation claim and a purely subjective statement can be neither true nor false.

Bussie v. Lowenthal, 535 So.2d 378, 381 (La. 1988)(internal citations omitted). In fashioning an approach to distinguish between statements of fact and statements of opinion, courts generally consider "whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." Mashburn v. Collin, 355 So.2d 879, 885 (La. 1977).

To determine whether CMP has stated a defamation claim, the Court must scrutinize the challenged words.  In the state court petition, CMP takes issue with statements made by Mickey Lambert, RSP's location manager, in an email he sent to New Orleans area movie production scouts and the New Orleans Mayor's Office Director

9

of Film on October 16, 2015. According to the state court petition at paragraph XXVIII:

> Mr. Lambert warn[ed] "anyone who is interested in using this location. I have shot there recently (evidenced by [CMP's] brochure) and it was a very bad experience. If you want to know some details, please feel free to call me. The bad experience has extended will [sic] beyond production, to the point where studio attorney's [sic] are still involved."

Breaking down this statement and considering first Mr. Lambert's suggestion that "it was a very bad experience" filming on CMP's property, the Court finds that this is merely an expression of Mr. Lambert's opinion, rather than an assertion of fact. Thus, the subjective statement is not actionable as defamation. See Sanders v. Dillard Univ., No. 14-845, 2014 WL 7342440 (E.D. La. Dec. 23, 2014)(Barbier, J.)(statement that professor was "neglecting [her students'] academic needs" was "pure opinion" and, thus, did not state a claim for defamation); Marshall Investments Corp. v. R.P. Carbone Co., No. 05-6486, 2006 WL 2644959 (E.D. La. Sept. 13, 2006)(Vance, J.)(statement to "stay away from the project" because the plaintiff was a "bad person" was insufficient to state a defamation claim). To be sure, there is no such thing as a false opinion. When one suggests that he had a bad experience dealing with another person, clearly this is an evaluative statement reflecting his view; a paradigm of opinion. This statement, which

10

conveys no facts, is merely a comment that is not capable of being objectively characterized as true or false.

Nor is the second portion of Mr. Lambert's statement actionable. Considering the second part of Mr. Lambert's statement (that the bad experience has extended well beyond production, to the point where studio attorneys are still involved), this is a mixed statement of opinion and fact. Again, the opinion portion ("the bad experience has extended well beyond production") is not actionable for the same reasons already articulated. The assertion of fact (that "the studio's attorneys are still involved") is just that: an assertion of fact. Not even CMP in its state court petition disputes the statement's truthfulness. That lawyers are involved is certainly true: each party is represented by counsel and the parties are presently airing their dispute in this forum. Falsity is an essential element of a defamation claim. Insofar as the second portion of Mr. Lambert's statement asserts a fact, the fact is true and therefore not actionable as defamation.[4] CMP's

---

[4] The Court also observes that the plaintiff has failed to allege factual support for the malice element of his defamation claim. The allegations in the state court petition merely parrot the elements of a defamation claim. Of course, mere labels and conclusions do not satisfy the plaintiff's obligation to provide the grounds of his entitlement to relief. The plaintiff fails to suggest in his opposition papers how Mr. Lambert could lack a reasonable belief in the truth of either (a) his own subjective opinion; or (b) the fact that lawyers are involved in this dispute post-production.

11

defamation claim (including counsel's suggestion in its briefing that the email is defamatory *per se*) is borderline frivolous and must be dismissed for failure to state a claim.

*B.*

Next, the Court considers the technical sufficiency of the plaintiff's "claim" to recover a percentage of income derived from production of the television series, *Quarry*. The defendants advance two grounds in support of their request for dismissal: first, they contend that the stipulated damages provision of the Location Agreement explicitly precludes the plaintiff's claim for an interest in the series; and, second, they submit that, as a matter of law, Louisiana does not permit non-compensatory damages for breach of contract. The plaintiff counters that it "is entitled to recover profits from the production of *Quarry* to 'place it in the same position' as if the Location Agreement had not been breached." The Court disagrees; the plaintiff's argument, again, borders on frivolous (and, arguably, vindictive).

Under Louisiana law, a party to a contract is "liable for the damages caused by his failure to perform a conventional obligation." La. Civ. Code art. 1994. Civil Code article 1995 instructs that damages for a breach of contract cause of action "are measured by the loss sustained by the obligee and the profit

12

of which he has been deprived." As the U.S. Court of Appeals for the Fifth Circuit has explained the limited nature of this measure of damages:

> Louisiana has embraced the contract damages principle of "expectation" damages. Under this principle, the general purpose of contract damages is not to punish breaching parties or enrich non-breaching parties, but rather to produce the same result as would have occurred if there was no breach. As stated by the Louisiana Supreme Court, the calculation of damages should place the non-breaching party "in the same position he would have been in" had the contract been fulfilled. A court must take "great care ... to ensure that the plaintiff is not actually placed in a *better* position than he would have attained had the contract been performed."

In re Bankston, 749 F.3d 399, 403 (5th Cir. 2014) (internal citations, parentheticals omitted; emphasis in original). In other words, consistent with the compensatory damages measure in common law parlance, "[w]hen one sustains a loss because of a breach of contract, the law does not authorize compensation twice for the same loss." LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C., 2013-0163 (La.App. 1 Cir. 11/7/14), 167 So.3d 746, 762.

At Paragraph XXXIII of the state court petition, the plaintiff alleges:

> As a direct result of the breaches of the Agreement, Defendants are liable *in solido* unto CMP for a reasonable percentage of any income and benefit derived from the production of the Recordings made for *Quarry Series 1* which in any manner depict CMP's Property.

The plaintiff does not suggest the source of its alleged entitlement to recover "a reasonable percentage of any income or benefit" related to the production of *Quarry*. To be sure, that source is not the Louisiana Civil Code or Louisiana contract damages law. Nor is that source the parties' Location Agreement.[5] The Location Agreement limits the plaintiff's remedy, in the event of breach, to money (as opposed to equitable) damages;[6] the Agreement also states that all rights and interest in *Quarry* belong to RSP.[7] Thus, the plain terms of the Agreement foreclose any equitable relief as well as any right or interest in the

---

[5] The Court's role in interpreting contracts is to determine the common intent of the parties. La. Civ. Code art. 2045. In determining common intent, pursuant to Civil Code article 2047, words and phrases are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See Henry v. South Louisiana Sugars Cooperative, 957 So.2d 1275, 1277 (La. 2007) (citing Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent" (La. Civ. Code art. 2046), and the agreement must be enforced as written. Hebert v. Webre, 982 So.2d 770, 773–74 (La. 2008). The Court's approach to a contract's meaning is driven by simple common sense principles.

[6] Paragraph 5 of the Location Agreement provides: "Your [CMP's] sole remedy for a breach by Producer of any of Producer's obligations hereunder shall be an action at law for money damages [and] in no event shall [CMP] be entitled to injunctive or other equitable relief."

[7] Paragraph 4 of the Agreement provides: "Producer shall solely and exclusively own and control all rights, title and interest of whatever nature (including without limitation all copyrights) in and to the Recordings, throughout the world, in perpetuity."

"Recordings" by CMP; enforcing the Agreement as written thus precludes the plaintiff's demand for "a reasonable percentage of any income and benefit derived from the production of the Recordings made for *Quarry Series 1* which in any manner depict CMP's Property." Notably, to accept the plaintiff's position would be to betray the doctrinal purpose of contract damages by punishing the alleged breaching party (RSP) and enriching the alleged non-breaching party (CMP). Allowing the plaintiff to recover income from *Quarry* would put the plaintiff in a better position than it would have been in absent any breach. Finding no source for the plaintiff's demand for this special theory and measure of damages for his breach of contract claim, the Court finds that the plaintiff has no right in law to recover "a reasonable percentage of any income and benefit derived from the production of the Recordings made for *Quarry Series 1* which in any manner depict CMP's Property."

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendants' partial motion to dismiss is hereby GRANTED. The plaintiff's defamation claim is dismissed, as is the "claim" to recover "a reasonable percentage of any income and benefit derived from the production of the Recordings made for *Quarry Series 1*

15

which in any manner depict CMP's Property."

New Orleans, Louisiana, October 5, 2016

_____
MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE