UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CMP, LLC                                    CIVIL ACTION


V.                                          NO. 16-6850


RAILWAY SPINE PRODUCTIONS, LLC, ET AL.      SECTION F


ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendants, Railway Spine Productions, LLC ("RSP"), Seven Curses Productions, LLC ("SCP"), Abel Meet Cain Productions, LLC ("AMCP"), and Home Box Office, Inc. ("HBO") in which they seek judgment as a matter of law dismissing the remaining claims of the plaintiff, CMP, LLC ("CMP"). For the reasons that follow, the motion is GRANTED in part and DENIED in part.

## Background

This litigation arises out of a production company's use of private property to film scenes for a television series.

CMP owns rural property, consisting of federally-designated wetlands, in the Town of Jean Lafitte, located in Jefferson Parish, Louisiana. RSP, a television production company, entered into a

1

Location Agreement with CMP to use a portion of its property from June to July 2015 to film scenes for a television series entitled *Quarry*. According to the Location Agreement dated May 12, 2015, the filming would occur from June 9, 2015 to July 28, 2015. This time period consisted of set preparation, shooting, and wrap periods. During set preparation, from June 9, 2015 to July 6, 2015, RSP was to prepare the "Vietnam Village," "Marine Barracks," and "Heroin Dock" sets. RSP would then shoot the scenes on July 7, 8, 9, and 13, 2015. The wrap period, during which property and personnel would be removed from CMP's property, was slated to last from July 14, 2015 to July 28, 2015. The Agreement obligated RSP to pay CMP $8,000 for prep, another $8,000 for wrap, and $7,500 for each day of shooting.

The Agreement also provided for CMP to receive additional fees if certain contingencies came to pass. According to the Agreement, RSP would owe CMP $1,500 a day in "Overage" for "each day property is occupied beyond the term." The Agreement also bound CMP to pay $100 per day for each day CMP's "site representative" assisted in opening and closing the property. This representative, per the Agreement, functioned as a "liaison between [CMP] and [RSP] and its designees." Thomas A. "Tac" Carrere is the manager of CMP, which owns the Jean Lafitte

property.[1]  Carrere admits that he requested the language of these provisions be included in the Location Agreement.

Also at Carrere's request, Paragraph 2 of the Location Agreement obliges RSP to acquire "all necessary permits" before using the property.[2]  Paragraph 2 of the Location Agreement empowered RSP to, "after acquiring any necessary permits, bring any personnel, equipment, props and temporary sets onto the Property" it deemed necessary or beneficial to the filming. However, Paragraph 2 also provided that RSP "shall **completely** remove" all such property upon the project's culmination (emphasis in Agreement).  All sets, props, and equipment, the Agreement further stipulated, were to remain RSP's property "unless otherwise agreed to in writing."

Aside from its duty to completely remove property it brought onto CMP's property by the expiration of the term, RSP further agreed to "provide all clean up" and "return the Property as received (reasonable wear and tear and hidden and latent defects excepted)" pursuant to Paragraph 7 of the Agreement.  That

---

[1] Carrere submits that his three children are the beneficiaries of a trust that has ownership interest in CMP.

[2] Carrere made this request, he says, based on his knowledge of local, state, and federal permit regulations that apply to CMP's property because it is located in the Louisiana Coastal Zone.

paragraph additionally obligated RSP to supply any repair costs in an amount mutually agreed upon by RSP and CMP.[3]

To complete preparation and construction tasks for the shoot, RSP enlisted Barrier Resources LLC, a construction company managed by Carrere and of which he is a member.  In early July, just days before filming began, Barrier Resources deposited river sand on a small tract of the property which heavy rains had rendered impassable.[4]  RSP paid a total of $117,886.76 to Barrier Resources for all of its work during filming.

On or around July 20, 2015, in accordance with its contractual obligations, RSP had removed most of its personnel and equipment. However, RSP had left behind refuse, construction materials, equipment, and portions of temporary sets and props.  The river

---

[3] An addendum to the Agreement later permitted RSP to clear and burn brush, weeds, and trees on the property as part of its creation of a "Vietnam Village" set, provided RSP remove its set pieces and any resultant burnt debris by the end of the term.  RSP also agreed to lay down up to three loads of gravel on the property's existing roads to counteract any wear and tear its activity would inflict.

[4] Whether Carrere recommended to RSP that it should purchase river sand from and have it deposited on the property by Barrier Resources is disputed.  Whether Carrere represented to RSP that he was experienced in matters of coastal restoration and whether he represented to RSP that no permits were necessary for depositing river sand on the property is disputed.  The circumstances of depositing the river sand is also disputed.

sand also remained behind on the property.  RSP additionally left intact on the property a small hut erected for the shooting, allegedly at the behest of Carrere for his children.  Carrere admits suggesting that RSP leave the hut, but he nevertheless suggests that it remains RSP's property because the parties never agreed in writing to transfer ownership of the hut.  According to CMP, the hut, the river sand, and remnants from RSP's sets remained on the property.

CMP submitted to RSP its contractor's invoice in the amount of $32,145.74 for remaining clean up and damage repair.  Mickey Lambert, on behalf of RSP, agreed with the scope of the work contemplated by the invoice, but not the price; he countered with changes amounting to a total of $19,214.50.  During the negotiations surrounding clean up, according to RSP, CMP never demanded that RSP remove the river sand.[5]  On July 31, 2015, CMP submitted its contractor's (Barrier Resource's) revised invoice for clean up in the amount of $19,400.

The parties mutually agreed on that amount for cleanup. Lambert, however, told CMP that CMP must first execute a release before RSP paid the $19,400.  CMP was concerned that the release

---

[5] Carrere admits he never insisted that the river sand be removed, but he says that is so because he assumed that permits had been obtained in advance of the sand's placement.

might shield RSP from mitigating any penalties imposed by regulatory authorities for the failure to acquire the necessary regulatory permits before the deposit of river sand onto CMP's property in early July. As a result, CMP refused to sign the release.[6]  The parties reached an impasse.

On April 22, 2016, CMP sued RSP, SCP, AMCP, and HBO in state court for breach of contract, defamation, and trespass. In its petition, CMP listed five breaches of the Agreement: (1) a failure to obtain necessary permits prior to occupying CMP's property, in particular, before depositing river sand on CMP's wetlands; (2) a failure to completely remove RSP's property from the site and failure to restore CMP's property to its pre-work condition; (3) a failure to pay the Site Representative Fee ($100/day) since June 18, 2015; (4) a failure to pay the Overage Fee ($1,500/day) from July 29, 2015 due to RSP's continuing occupation of the property; and (5) an attempt to impose unauthorized and overreaching conditions on CMP in return for their obligation to pay for the cleanup of CMP's property.  CMP also sought to recover a portion of the income generated by *Quarry*.  On May 23, 2016, the defendants

---

[6] CMP hired a lawyer to draft a release that did not waive the indemnity provisions in the Agreement.  The release was forwarded to the defendants on August 15, 2015 and included a provision that HBO shall be the guarantor of the indemnity provision in the Agreement.  Defendants countered with yet another release that was unacceptable to CMP.

removed the case to this Court, invoking the Court's diversity jurisdiction.  The defendants later filed a third party complaint against Thomas Carrere and Barrier Resources.[7]

The defendants first moved to dismiss CMP's defamation claim and its claim to recover income from *Quarry*.  In an October 6, 2016 Order and Reasons, this Court granted the motion, dismissing the plaintiff's defamation claim and its claim seeking a percentage of income derived from the production of *Quarry*.  In early November, the parties agreed to settle CMP's claim for breach of the obligation to clean and restore its property.  The settled claim entails only RSP's alleged duty of

> removing debris and partial sets and props
> left behind on CMP's Property, removal of dead
> and burned trees on CMP's Property caused by
> RSP's activities thereon, levelling grading
> and applying limestone to roads on CMP's
> Property damaged by RSP's equipment, and
> repairing a levee damaged by RSP's equipment
> on CMP's Property.

Meanwhile, CMP moved for partial summary judgment.  CMP claimed that it demonstrated, as a matter of law, that: (1) pursuant to the Location Agreement RSP is liable for $1,500 a day in "Overage Fees" for every day since July 28, 2015 during which

---

[7] The third party plaintiffs seek indemnification and contribution for any liability arising out of the failure to procure permits before depositing river sand on the property.

RSP has failed to "completely remove" its property from CMP's property and to complete its repair and refurbishment obligations; (2) pursuant to the Agreement, RSP owes CMP $100 a day in "Site Representative Fees" for every day between June 18, 2015 and July 28, 2015; and (3) RSP is liable for reasonable attorney's fees and expenses incurred by CMP in the enforcement of RSP's obligation to pay the aforementioned Overage and Site Representative Fees under the Location Agreement. The defendants filed a cross-motion for partial summary judgment, asserting that the record supported dismissal of the overage fee, site representative, and attorney's fees claims. On February 9, 2017, the Court denied the plaintiff's motion for partial summary judgment and granted in part and denied in part the defendants' motion. The Court determined that the plaintiff was not entitled to overage fees, but that factual controversies precluded summary judgment on the issues of the plaintiff's entitlement to site representative fees and legal fees. See Order and Reasons dtd. 2/9/17.

Now the defendants seek summary relief on the plaintiff's remaining claims.

8

II.

A.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc.,

819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

B.

In exercising diversity jurisdiction, the substantive issues of this case are governed by Louisiana law.  Travelers Cas. & Sur. Co. of Am. v. Wright Ins. Agency Inc., 404 F.3d 927, 928 (5th Cir. 2005).  Interpreting a contract in accordance with Louisiana law requires a court to attempt to determine the common intent of the parties.  LA. CIV. CODE art. 2045.  Pursuant to Louisiana Civil Code Article 2046, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  LA. CIV. CODE art. 2046; see In re Liljeberg Enters., Inc., 304 F.3d 410, 440 (5th Cir. 2002).  Courts must grant the words of a contract their "generally prevailing meaning" in ascertaining their effects.  LA. CIV. CODE art. 2047. Each contractual provision should be interpreted in the context of the contract's other provisions and its suggested meaning as a whole.  LA. CIV. CODE art. 2050; see Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P., 683 F.3d 666, 669 (5th Cir. 2012).  A court may grant summary judgment if a contract or contractual provision at issue is susceptible to unambiguous interpretation within its four corners.  See Greenwood 950, 683 F.3d at 668.  If, however, two or more reasonable interpretations of the words of a contract exist, the ambiguity is strictly construed against the drafter. LA. CIV. CODE art. 2056; see

11

Liljeberg, 304 F.3d at 440; Sims v. Mulhearn Funeral Home, Inc., 956 So. 2d 583, 590 (La. 2007).

Louisiana law instructs that a party to a contract is "liable for the damages caused by his failure to perform a conventional obligation." LA. CIV. CODE art. 1994. Civil Code article 1995 instructs that damages for a breach of contract cause of action "are measured by the loss sustained by the obligee and the profit of which he has been deprived." A plaintiff alleging breach of contract under Louisiana law "has the burden of proving damage and its amount." Arthur J. Gallagher & Co. v. Babcock, 703 F.3d 284, 293-94 (5th Cir. 2012)(citation omitted). Indeed, "proof of damages is an essential element to a breach of contract claim." Sanga v. Perdomo, 167 So.3d 818, 822 (La.App. 5 Cir. 2014).

Mindful of these commonsense principles, the Court turns to consider whether the defendants are entitled to judgment as a matter of law concerning the plaintiff's remaining claims for breach of contract (for failure to procure permits for river sand and for failure to pay more in site representative fees) and for contractual attorney's fees. The Court then finally considers whether the defendants are entitled to judgment as a matter of law dismissing the plaintiff's trespass claim.

II.

A.    CMP's Breach of Contract for Failure to Acquire
      Permits for River Sand

The defendants submit that the Location Agreement does not oblige RSP to acquire environmental permits.  The plain language of the Agreement, RSP submits, requires RSP to obtain permits before doing four specifically enumerated production tasks, none of which have anything to do with environmental permits.  RSP submits that sand was deposited on the property to address poor weather conditions that caused excess rain and mud, not as props for its show.  CMP counters that the Court may only consider whether the Location Agreement provides that RSP was obligated to obtain permits in this case and whether RSP must indemnify CMP **_if_** adverse regulatory action is taken, but that the Court lacks jurisdiction to determine the scope of the damage caused to the wetlands.  CMP argues:

> The parties agree that the federal and state regulatory
> permits were required to deposit river sand on CMP's
> property.  Yet they argue that it was Carrere's or BR's
> obligation to do so.  That determination must be made
> administratively by either the LA Department of Natural
> Resources ("LADNR") or the US Army Corps of Engineers
> ("USACE"), which will define the scope of the work and
> mitigation that will need to be done in connection with
> the permit process.  This Court lacks subject matter
> jurisdiction to do so initially.... Likewise, under
> Section 404 of the Federal Clean Water Act...this court
> does not have original jurisdiction to adjudicate the

13

> wetlands permit issues in this case....   In this case,
> there has been no state or federal agency action with
> regard to RSP's depositing of river sand on CMP's
> Jurisdictional Bottomland Hardwood wetlands.

According to CMP, RSP materially breached the parties' agreement
in failing to procure permits from the Secretary of the U.S. Army
Corps of Engineers and the Secretary of the Louisiana Department
of Natural Resources prior to depositing river sand on the
property.  Notably, CMP admits that it has suffered no damages for
this alleged breach, but speculates that it may suffer damages in
the future if adverse regulatory action is ever taken.

To determine whether RSP breached the Location Agreement by
failing to obtain environmental permits before depositing river
sand, the Court first considers the relevant language of the
Location Agreement.  Paragraph 2 states:

> Producer may during the Term of this agreement and after
> acquiring any necessary permits: (a) bring personnel,
> equipment, props and temporary sets onto the Property,
> provided Producer shall completely remove the same upon
> completion of work and all sets, props and equipment
> shall remain Producer's property unless otherwise agreed
> to in writing by Owner and Producer.  Equipment, props
> and temporary sets shall not become fixtures by reason
> of their use on the Property; (b) visit, story-board, or
> otherwise inspect the Property at reasonable times and
> after reasonable notice to Owner's designated site
> representative, to plan and set up prior to photography;
> (c) re-enter the Property after completion of principal
> photography for the purpose of making added scenes and
> retakes on a date or dates mutually agreed to by Owner
> and Producer and provided Producer compensates Owner in

the same manner as described above as Location Fee and/or
Additional Fee(s); and (d) use the real and/or
fictionalized name(s) of the Property. The rights
granted herein are in addition to and shall not limit
any rights which Producer may have or enjoy as a member
of the public.

This provision obliges RSP to acquire "necessary" permits for

equipment, props, and temporary sets. The parties' dispute focuses

on whether or not "necessary" is ambiguous and should be construed

against the plaintiff; and, even if not, whether the sand was a

"prop" or part of a "temporary set" for which the defendants should

have obtained permits, or, instead, whether the sand was used at

Carrere's suggestion to ameliorate poor conditions caused by bad

weather. Fortunately, the Court need not wade into the depths of

the many facets[8] of this breach issue -- factual controversies that

---

[8] Among other things, the parties dispute: whether Carrere had
begun restoration work on the property (which presumably would
have required permits) prior to the execution of the Location
Agreement; whether Carrere recommended that sand be laid down to
address poor road conditions and whether he showed RSP where sand
had previously been brought on the property (which would have
required permits); whether Carrere was ever asked whether permits
were necessary and whether he answered in the negative; whether
any sand was brought on the property to serve as a prop or part of
a temporary set; whether Carrere's sworn statements that he
(through Barrier Resources) agreed to bring sand on the property
only on the assumption that RSP had secured federal and state
permits is credible in light of the evidence in the record
regarding Carrere's knowledge regarding environmental permits and
the defendant's expert report regarding such permits. For each of
these issues, the defendants submitted affidavits or other record
evidence in support of their position and the plaintiff submitted
more than one affidavit by Carrere in which he controverts the

would otherwise preclude summary judgment -- because the plaintiff has failed to submit evidentiary support for an essential element of its breach of contract claim:  there is no record evidence that CMP has been damaged by the failure to acquire permits for sand.

Here, the defendants are entitled to judgment as a matter of law dismissing the plaintiff's breach of contract claim regarding the failure to acquire permits for sand because the plaintiff has failed to submit any evidence in support of the damages element of its claim.  Absent from the record is any evidence showing that CMP has suffered any loss caused by the failure to obtain permits for river sand.  There is simply no proof that any fines or penalties have been imposed, or that any costs have been incurred by CMP in connection with the absence of permits for river sand. Indeed, "CMP agrees that there is no proof that any compensatory mitigation, fines penalties or other associated costs have been incurred by CMP relating to any permitting issues, because there

---

defendants' evidence by his sworn statements.  For example, Carrere denied in one of his affidavits that he had put sand down on the property prior to *Quarry*, but the defendants submitted an email from art director William Budge in which Budge says that the access road is not drivable, that it has "become mud due to all the rain" and that "Tac [Carrere] is suggesting laying sand down, which he says they did along the road around where we were discussed [sic] putting the barracks.  It pulls the water up and dries it....  His estimate is $4,769 to lay 80 yrds of river sand down."

has yet to be an administrative proceeding...to make such a determination." Summary judgment in the defendants' favor is proper where, as here, CMP has failed to establish damages, an essential element of its case. Accordingly, the defendants are entitled to judgment as a matter of law dismissing CMP's breach of contract claim for the failure to obtain permits for river sand.

      B.    CMP's Breach of Contract Claim for Failure to Pay Site
                Representative Fee

The plaintiff alleges that RSP breached the Location Agreement by paying this $100/day fee for only nine days, instead of for the full term of the Location Agreement. The defendants seek summary judgment dismissing this breach of contract claim on the ground that the plaintiff has failed to submit precise evidence of breach.

The Court addressed this very issue in February when it was presented with cross motions for partial summary judgment:

> CMP also claims that it has established beyond a triable issue of fact that the defendants owe 41 days' worth of Site Representative Fees pursuant to the Location Agreement. The Site Representative Fee provision mandates that CMP receive $100 a day for each day its representative helps "open and close" the property.
>
> The defendants do not deny that they have yet to pay the $4,100 in Site Representative Fees CMP requests. They instead complain about CMP's previous attempt to extract Site Representative Fees for each day they

sought overage, an attempt CMP did not revive in this motion for partial summary judgment.

In showing that the defendants have failed to pay the $4,100, however, CMP has failed to adequately demonstrate *why* it should receive $100 for each day between June 18 and July 18, 2015. Namely, CMP has not shown that a site representative aided in opening or closing the property for each and every one of the days for which it requests fees. In emails exchanged between the parties shortly after the term's expiration, RSP expresses a desire to verify that a CMP representative helped open and close the property for each of the 41 days from mid-June to late July. Although CMP insists that the provision was intended to cover every day of the Agreement's term, the Agreement itself only clearly affords the CMP representative $100 a day "to open and close" the property. Because neither party has supplied evidence demonstrating beyond a genuine issue of material fact that a CMP representative did or did not help "open or close" the property for any or all of the 41 days at issue, the Court cannot grant summary judgment to either party on this issue.

<u>See</u> Order and Reasons dtd. 2/8/17. Beyond more tit for tat, nothing has altered the summary judgment record. In his most recent affidavit, Carrere suggests "I was present practically every day during the entire term of the Location Agreement on site to open and close the property and to act as liaison between CMP and RSP." And, defendants offer nothing to refute this admittedly self-serving and unhelpful statement. Indeed, the defendants concede that Carrere was frequently on site: RSP's Mickey Lambert, equally unhelpful, stated that Carrere was "frequently present" during the term. The record does not suggest, beyond dispute,

that CMP is not entitled to the site representative fee for which
it contracted.   It suggests the opposite: CMP is entitled to
additional site representative fees.

Insofar as RSP submits that Carrere's self-serving sworn
statement is "incompetent" summary judgment evidence, RSP is
incorrect.  An affidavit based on personal knowledge and containing
factual assertions suffices to create a fact issue, even if the
affidavit is self-serving.  See Dallas/Forth Worth Int'l Airport
Bd. v. INet Airport Sys., Inc., 819 F.3d 245, 253 n.14 (5th Cir.
2016)(citation omitted); see also Rushing v. Kan. City S. Ry., 185
F.3d 496, 513 (5th Cir. 1999)("[M]erely claiming that the evidence
is self-serving does not mean we cannot consider it or that it is
insufficient.  Much evidence is self-serving and, to an extent,
conclusional."), superseded on other grounds by Fed. R. Evid.
103(a).

What is undisputed: RSP paid the site representative fee for
9 days, but Carrere was on the property "frequently" or
"practically every day" and, therefore, CMP earned site
representative fees for more than 9 days.[9]  Unfortunately, there
is no evidence in the record to establish the exact number of days

---

[9] That the parties have not settled this claim, which is worth less
than $4,100, is emblematic of the vexatious character of this
litigation and the childish hostility.  See 28 U.S.C. § 1927.

Carrere assisted in opening or closing the property.[10]    Assuming
the only evidence to support entitlement to additional site
representative fees is Carrere's word, the Court is forbidden from
making credibility determinations on this, a paper, record.    At
the upcoming bench trial, on the other hand, this Court will be
the factfinder and will carefully scrutinize the testimony on this
issue in probing whether CMP has proved this claim by a
preponderance of the evidence.    Summary judgment is not proper.

    C.    CMP's Claim that RSP Attempted to Impose Unauthorized
           Conditions on CMP

      CMP also seeks judgment as a matter of law dismissing the
plaintiff's "claim" that RSP attempted to impose "unauthorized and
overreaching conditions on CMP" when it asked CMP to sign a release
in connection with paying the final invoice for cleanup.    Assuming
CMP ever advanced such nonsense in the form of a claim for relief
in his complaint, it has abandoned the claim by failing even to
respond to the defendants' motion for summary judgment on this
issue.    Insofar as the defendants in an abundance of caution seek
summary judgment dismissing such claim, they have shown
entitlement to judgment as a matter of law.    CMP offers no legal

---

[10] The Court can't exactly multiply $100 times "practically every
day."

support to maintain such a claim for "attempt," nor is there any evidence that CMP was damaged as a result of being presented with a written release to sign; a release CMP refused to sign.

      D.    CMP's Claim for Attorney's Fees for Enforcing the Location Agreement

CMP seeks reasonable attorney's fees and expenses incurred in its effort to enforce the Site Representative Fee provision as well as the cleanup provision of the contract; the matter of cleanup has been settled, but CMP suggests that it reserved its right to seek attorney's fees for enforcement of that provision.

Paragraph 6 unequivocally entitles CMP to "all reasonable outside attorneys' fees and costs . . . if it must file suit or retain counsel to enforce the terms of this Agreement." This Court has already determined that CMP is not entitled, as a matter of law, to any legal fees expended in the attempt to charge the defendants $1,500 a day in overage.  However, as previously observed, CMP may recover reasonable expenses to the extent needed to enforce any right it may have to outstanding Site Representative Fees, should it prevail on that issue at trial.  As it was in February, determining the merits of CMP's entitlement to

attorney's fees remains premature.[11]  Of course, under the terms

of the Agreement, any recovery will be limited to "reasonable"

attorney's fees and expenses.  Moreover, the plaintiff will not be

permitted to recover attorney's fees and expenses that were paid

toward work performed to advance claims that have been dismissed

as a matter of law.  Furthermore, whatever the outcome at trial,

the Court will entertain papers from both sides considering whether

28 U.S.C. Section 1927 is implicated.  Any award under Section

1927 might well exceed the worth of the claims that have survived

a tortuous motion practice.

III.

Finally, the Court takes up yet another issue it is asked to

rehash:  whether CMP's trespass claim fails as a matter of law.

The Louisiana Civil Code recognizes the tort of trespass under

article 2315.  _Richard v. Richard_, 24 So. 3d 292, 296 (La. App. 3

Cir. 2009).  "A trespass occurs when there is an unlawful physical

invasion of the property or possession of another."  _Id._  There is

no trespass when the landowner gives consent to the presence.

---

[11] CMP and RSP resolved CMP's claim for payment of Barrier
Resources' invoice to clean up CMP's property on November 7, 2016,
but, CMP stresses, that settlement did not include, and CMP
retained its right to enforce, its claim for attorney's fees and
expenses incurred as a result of having to enforce that obligation.

Beals v. Griswold, 468 So. 2d 641, 644 (La. App. 4 Cir. 1985).
"Damages are recoverable for 'unconsented to activities performed
on the property of another, based on physical property damage,
invasion of privacy, inconvenience, and mental and physical
suffering." Richard, 24 So. 3d at 296 ("The tort of trespass has
long been recognized by courts...as a means to correct the damage
caused when an owner is unjustly deprived of the use and enjoyment
of his immovable.")(citations omitted).

The record establishes that CMP gave its consent to the
presence of RSP's many props, sets, and other materials brought
onto the property consistent with the Location Agreement.  And,
the Court has already determined that CMP's "attempt[] to contort
the defendants' post-term conduct into an ongoing trespass...is
without merit." See Order and Reasons dtd. 2/8/17.  The parties
contemplated additional fees would be owed CMP if RSP "occupied"
the property beyond the term, but this Court found the property
was not "occupied" beyond the term.  See id.  The parties also
contemplated obligations for cleanup, returning the property as
received, and for "repair costs."  That is, RSP was obliged to
"completely remove" its props and equipment "upon completion of
work."  Although RSP initially did not do so to CMP's satisfaction,
the parties have since settled this claim for RSP's alleged breach
for failure to cleanup and restore the property.

CMP was compensated for the use of its land and the Location Agreement spelled out the parties' obligations, including how to resolve issues concerning leftover materials or property damage. Moreover, RSP has paid for, and the parties have resolved, CMP's claims for "physical property damage" based on the cost to restore the property, and that breach of contract claim has been dismissed with prejudice.  See Order dtd. 11/21/16 (granting the plaintiff's motion to dismiss released claim).  This Court has also rejected CMP's "attempt[] to contort the defendants' post-term conduct into an ongoing trespass and the Overage Fee provision as a stipulated damage clause triggered by that trespass[,]" finding that this provision "simply guaranteed CMP daily overage for each additional day RSP...failed to finish what they came to do: use the land to film a television series."  See Order and Reasons dtd. 2/8/17. Nevertheless, CMP continues to pursue a tort theory of recovery, for continuing trespass, now suggesting that "processed soil and river sand...remains on CMP's property to this day."  CMP complains, again, not that it did not consent to sand being brought on the property (indeed, CMP's sibling company, Barrier Resources, was the source of most, if not all, of the sand), but, instead, argues that bringing sand on the property *without permits* constitutes trespass...that CMP would not have consented to the sand being deposited had it known no permits were obtained in

advance.  Whether CMP is attempting to impose tort liability for a breach of contract claim that has been resolved,[12] or whether CMP is attempting to recast in negligence terms its claim for breach of contract for failure to secure permits, both attempts are frivolous failures.

Yet again, CMP offers no support for its continuing trespass theory.  See Order and Reasons dtd. 2/8/17.  Even if it had any support in law for its argument (that, without proper permits the presence of sand is unlawful under a trespass theory of recovery), any such trespass-by-sand-claim meets the same fate of dismissal as the breach of contract claim: on this record, no damages support CMP.  Carrere's sworn statement merely lists how CMP was allegedly damaged by RSP's alleged trespass, in the abstract:

> CMP has suffered damages as a result of its trespass claim, including but not limited to, damages for the physical property damage caused by RSP's activities, for the invasion of CMP's privacy by RSP's abandonment of its refuse, props and temporary sets on CMP's Property, for the deprivation of CMP's use and enjoyment of its property, and the inability to utilize the property for other commercial purposes.[13]

---

[12] To be sure, the Court is troubled by the fact that the parties have settled CMP's claim for breach of contract in regards to cleanup and, yet, CMP appears to seek recovery in tort for the exact same conduct.

[13] In its opposition papers, counsel for CMP equivocates as to whether this trespass claim seeks to recover for only the presence of the river sand, or also for the "rubbish and property" that counsel admits were removed from plaintiff's property pursuant to

Carrere's conclusions regarding CMP's alleged damages find no support in the summary judgment record.  Unlike when Carrere states that he was on the premises practically every day, in support of CMP's claim for site representative fees -- a statement suggesting a fact about which he has personal knowledge -- Carrere's statement listing damages for trespass are not facts based on personal knowledge.  Carrere merely announces sweeping categories of damages that may be recovered if one prevails on a cause of action for trespass.  Failing to offer any facts supporting the essential

_____

the parties' settlement.  That this latest Carrere affidavit is dated March 14, 2017 (several months after the parties settled the cleanup claim and CMP released defendants from their obligation to cleanup and refurbish CMP's property consistent with paragraph 7 of the Location Agreement) and continues to mention "RSP's abandonment of its refuse, props and temporary sets" suggests that the plaintiff's trespass claim goes beyond the river sand and also seeks to recover damages for a claim that has been settled. Counsel's penchant to slay the slain suggests ignorance of what has become required reading in these proceedings:

> Any attorney or other person admitted to conduct cases
> in any court of the United States or any Territory
> thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the
> court to satisfy personally the excess costs, expenses,
> and attorneys' fees reasonably incurred because of such
> conduct.

28 U.S.C. § 1927.

26

damages element of the plaintiff's trespass claim entitles the defendants to judgment as a matter of law dismissing the claim.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendants' motion for summary judgment is GRANTED in part (insofar as the defendants are entitled to judgment as a matter of law dismissing the plaintiff's claims for breach of contract for failure to secure permits, breach of contract for attempt to impose unauthorized condition, and trespass) and DENIED in part (insofar as the plaintiff's claim for breach of site representative fee provision and its claim for contractual attorney's fees remain for trial).

New Orleans, Louisiana, April 5, 2017

MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE